## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| STERIGENICS U.S., LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action |
| | ) | No.  1:20-cv-01382-WMR |
| COBB COUNTY, GEORGIA; | ) | |
| NICHOLAS DAWE, Fire Marshal of | ) | |
| Cobb County, Georgia, in his Individual | ) | |
| Capacity; and KEVIN GOBBLE, | ) | |
| Development and Inspections Division | ) | |
| Manager and Chief Building Official of | ) | |
| Cobb County, Georgia, in his Individual | ) | |
| Capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## SECOND AMENDMENT TO COMPLAINT FOR
## DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Pursuant to Federal Rule of Civil Procedure 15(a)(2) and L.R. 15.1, and with

the consent of Defendants,[1] Plaintiff Sterigenics U.S., LLC ("Sterigenics") hereby

adds and amends the following paragraphs of its Complaint for Declaratory

Judgment and Injunctive Relief to state as follows:

---

[1] Sterigenics files this Second Amendment to its Complaint with the opposing parties' written consent.  Sterigenics requested consent on April 16, 2021, and Counsel for Defendants confirmed their consent on April 21, 2021.

167.   Dawe had no legal authority to require Sterigenics to obtain a new certificate of occupancy under Section 54-51(c) and (i) of the Cobb County Ordinance also because the County failed to follow O.C.G.A. § 8-2-25(c) for those ordinance provisions to take effect under Georgia law.

168.   Pursuant to O.C.G.A. §§ 8-2-20(9)(B) and 8-2-25(a), certain "minimum standard codes" have state-wide application to municipalities and counties in Georgia (the "State Minimum Standard Codes").

169.   The State Minimum Standard Codes include the International Fire Code (ICC) and the International Building Code (ICC).

170.   O.C.G.A. § 8-2-25(c)(1) provides, "In the event that the governing authority of any municipality or county finds that the state minimum standard codes do not meet its needs, the local government may provide requirements not less stringent than those specified in the state minimum standard codes when such requirements are based on local climactic, geologic, topographic, or public safety factors; provided, however that there is a determination by the local governing body of a need to amend the requirements of the state minimum standard code based upon a demonstration by the local governing body that the local conditions justify such requirements not less stringent than those specified in the state minimum standard codes for the protection of life and property."

171.   O.C.G.A. § 8-2-25(c)(1) further provides:

   a.   "All such proposed amendments shall be submitted by the local governing body to the [Georgia Department of Community Affairs (the "department" or the "DCA")] 60 days prior to the adoption of such amendment";

   b.   "Concurrent with the submission of the proposed amendment to the department, the local governing body shall submit in writing the legislative findings of the governing body and such other documentation as the local governing body deems helpful in justifying the proposed amendment";

   c.   "The department shall review and comment on a proposed amendment"; and

   d.   the DCA can recommend, *inter alia*, "[t]hat the proposed local amendment should not be adopted, due to the . . . lack of sufficient evidence to show that local climatic, geologic, topographic, or public safety factors require such an amendment . . . ."

172.   O.C.G.A. § 8-2-25(c)(3) provides, "In the event the department recommends against the adoption of the proposed local amendment, a local

governing body shall specifically vote to reject the department recommendations before any local amendment may be adopted."

173.   O.C.G.A. § 8-2-25(c)(4) further provides, "No local amendment shall become effective until the local governing body has caused a copy of the adopted amendment to be filed with the department."  O.C.G.A. § 8-2-25(c)(4).

174.   County Ordinance Section 54-51(c)'s requirement that a building occupant obtain a new certificate of occupancy from the County Fire Marshal in order to continue its occupancy of a building if there is a "substantial renovation" at the building, which County Ordinance Section 54-51(i) defines as, "any construction project involving exits or internal features of such building, or any structure costing more than the building's or structure's assessed value according to county tax records at the time of such renovation," is a local amendment to the State Minimum Standard Codes.

175.   When adopting County Ordinance Sections 54-51(c) and (i), the County did not make a legislative determination that local climactic, geologic, topographic, or public safety factors justified County Ordinance Sections 54-51(c) and (i) for the protection of life and property.

4

176.   The County did not submit County Ordinance Sections 54-51(c) and (i) to the DCA for the DCA's review and comment before the County adopted County Ordinance Sections 54-51(c) and (i).

177.   The County did not submit any written legislative findings justifying County Ordinance Sections 54-51(c) and (i) to the DCA before the County adopted County Ordinance Sections 54-51(c) and (i).

178.   The County did not file a copy of County Ordinance Sections 54-51(c) and (i) with the DCA.

179.   Because the County did not make a legislative determination that local climactic, geologic, topographic, or public safety factors justified County Ordinance Sections 54-51(c) and (i) for the protection of life and property, County Ordinance Sections 54-51(c) and (i) are ineffective, null and void under O.C.G.A. § 8-2-25(c).

180.   Because the County did not submit County Ordinance Sections 54-51(c) and (i) to the DCA for the DCA's review and comment, County Ordinance Sections 54-51(c) and (i) are ineffective, null and void under O.C.G.A. § 8-2-25(c).

181.   Because the County did not file a copy of County Ordinance Sections 54-51(c) and (i) with the DCA, County Ordinance Sections 54-51(c) and (i) are ineffective, null and void under O.C.G.A. § 8-2-25(c).

182.  Consequently, for the additional reason that the County failed to comply with the requirements of O.C.G.A. § 8-2-25(c) when adopting County Ordinance Sections 54-51(c) and (i), Dawe has no authority under County Ordinance Sections 54-51(c) and (i) to require Sterigenics to obtain a new certificate of occupancy to continue its occupancy and operations at the Facility.

183.  An actual and substantial continuing controversy exists between Sterigenics and Gobble and Dawe who have adverse legal interests concerning Dawe's legal authority to require Sterigenics to obtain a new certificate of occupancy to continue its longstanding operations at the Facility.

184.  Because of the unlawful actions of Dawe to preclude Sterigenics' longstanding operation of the Facility, Sterigenics has suffered injuries, and there is a substantial likelihood that Sterigenics will continue to suffer injuries in the future if Dawe continues his unlawful actions to preclude Sterigenics' use and operation of the Facility.

185.  Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, Sterigenics is entitled to a judgment declaring that Dawe has no legal authority to require that Sterigenics obtain a new certificate of occupancy in order to continue its longstanding operations at the Facility.

6

### b) Gobble Has No Legal Authority Under the County's Ordinance to Require a New Certificate of Occupancy.

186.   Gobble also has no authority to require a new certificate of occupancy for a tenant or landowner's use of a building under the County's Ordinance unless there has been a change of occupancy at the building.

187.   Sterigenics has not changed its longstanding occupancy at the Facility.

188.   Gobble therefore has no authority to require Sterigenics to obtain a new certificate of occupancy in order to continue its longstanding operations at the Facility.

189.   An actual and substantial continuing controversy exists between Sterigenics and Gobble and Dawe who have adverse legal interests concerning Gobble's legal authority to require Sterigenics to obtain a new certificate of occupancy to continue its longstanding operations at the Facility.

190.   Because of the unlawful actions of Gobble and Dawe to preclude Sterigenics' longstanding operation of the Facility, Sterigenics has suffered injuries, and there is a substantial likelihood that Sterigenics will continue to suffer injuries in the future if Gobble continues his unlawful actions to preclude Sterigenics' use and operation of the Facility.

191.   Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, Sterigenics is entitled to a

judgment declaring that Gobble has no authority to require Sterigenics to obtain a new certificate of occupancy from the County in order to operate its Facility for this additional and alternative reason.

**COUNT IV – Declaratory Judgment:**
**Legislative Violation of the United States Constitution**
**(Against Defendant Cobb County)**

192.   Sterigenics re-alleges and reincorporates paragraphs 1 through 129 and 157 of this Complaint.

193.   Section 54-51(c) of the Cobb County Ordinance provides that "certificates of occupancy shall run for the life of the building structure or tenant space, except where there is a change in the classification of occupancy, substantial renovation, reconstruction due to fire or other hazard of serious consequence, renovation or addition."  Sec. 54-51(c), Cobb County Ord.

194.   The definition of "substantial renovation" in Section 54-51(i) of the Cobb County Ordinance is unconstitutionally vague, because it fails to provide people of ordinary intelligence a reasonable opportunity to understand the type of work which constitutes a "substantial renovation" requiring a new certificate of occupancy, and because it authorizes and encourages arbitrary and discriminatory enforcement of Section 54-51(c).

195.   The requirement that a building occupant obtain a new certificate of occupancy if there is a "substantial renovation" under Section 54-51(c) of the Cobb County Ordinance also is unconstitutionally arbitrary and capricious.

196.   Section 54-51(c)'s requirement that a new certificate of occupancy is required if there has been a "substantial renovation" is therefore void and in violation of Sterigenics' rights under the due process requirements of the Fifth and Fourteenth Amendments of the United States Constitution.

197.   An actual and substantial continuing controversy exists between Sterigenics and Defendants who have adverse legal interests concerning the unconstitutionality of Section 54-51(c)'s requirement of a new certificate of occupancy if there has been a "substantial renovation."

198.   Because of the unconstitutionality of Sections 54-51 (c) and (i) of the County's Ordinance, Sterigenics has suffered injuries, and there is a substantial likelihood that Sterigenics will continue to suffer injuries in the future if Section 54-51(c)'s requirement of a new certificate of occupancy if there has been a "substantial renovation" is not declared unconstitutional and void.

199.   Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, Sterigenics is entitled to a

judgment declaring Section 54-51(c)'s requirement for a new certificate of occupancy if there has been a "substantial renovation" is unconstitutional and void.

### COUNT V – Declaratory Judgment:
### Defendant Dawe Has No Authority Under County Ordinance Sections 54-51(c) and (i) Because They Are Ineffective Under O.C.G.A. § 8-2-25(c)
### (Against Defendant Dawe)

200.   Sterigenics re-alleges and reincorporates paragraphs 1 through 129 and 157 of this Complaint.

201.   Pursuant to O.C.G.A. §§ 8-2-20(9)(B) and 8-2-25(a), certain "minimum standard codes" have state-wide application to municipalities and counties in Georgia (the "State Minimum Standard Codes").

202.   The State Minimum Standard Codes include the International Fire Code (ICC) and the International Building Code (ICC).

203.   O.C.G.A. § 8-2-25(c)(1) provides, "In the event that the governing authority of any municipality or county finds that the state minimum standard codes do not meet its needs, the local government may provide requirements not less stringent than those specified in the state minimum standard codes when such requirements are based on local climactic, geologic, topographic, or public safety factors; provided, however that there is a determination by the local governing body of a need to amend the requirements of the state minimum standard code based upon a demonstration by the local governing body that the local conditions justify such

10

requirements not less stringent than those specified in the state minimum standard codes for the protection of life and property."

204.   O.C.G.A. § 8-2-25(c)(1) further provides:

a. "All such proposed amendments shall be submitted by the local governing body to the [Georgia Department of Community Affairs (the "department" or the "DCA")] 60 days prior to the adoption of such amendment";

b. "Concurrent with the submission of the proposed amendment to the department, the local governing body shall submit in writing the legislative findings of the governing body and such other documentation as the local governing body deems helpful in justifying the proposed amendment";

c. "The department shall review and comment on a proposed amendment"; and

d. the DCA can recommend, *inter alia*, "[t]hat the proposed local amendment should not be adopted, due to the . . . lack of sufficient evidence to show that local climatic, geologic, topographic, or public safety factors require such an amendment . . . ."

205.   O.C.G.A. § 8-2-25(c)(3) provides, "In the event the department recommends against the adoption of the proposed local amendment, a local governing body shall specifically vote to reject the department recommendations before any local amendment may be adopted."

206.   O.C.G.A. § 8-2-25(c)(4) further provides, "No local amendment shall become effective until the local governing body has caused a copy of the adopted amendment to be filed with the department." O.C.G.A. § 8-2-25(c)(4).

207.   County Ordinance Section 54-51(c)'s requirement that a building occupant obtain a new certificate of occupancy from the County Fire Marshal in order to continue its occupancy of a building if there is a "substantial renovation" at the building, which County Ordinance Section 54-51(i) defines as, "any construction project involving exits or internal features of such building, or any structure costing more than the building's or structure's assessed value according to county tax records at the time of such renovation," is a local amendment to the State Minimum Standard Codes.

208.   When adopting County Ordinance Sections 54-51(c) and (i), the County did not make a legislative determination that local climactic, geologic, topographic, or public safety factors justified County Ordinance Sections 54-51(c) and (i) for the protection of life and property.

12

209.   The County did not submit County Ordinance Sections 54-51(c) and (i) to the DCA for the DCA's review and comment before the County adopted County Ordinance Sections 54-51(c) and (i).

210.   The County did not submit any written legislative findings justifying County Ordinance Sections 54-51(c) and (i) to the DCA before the County adopted County Ordinance Sections 54-51(c) and (i).

211.   The County did not file a copy of County Ordinance Sections 54-51(c) and (i) with the DCA.

212.   Because the County did not make a legislative determination that local climactic, geologic, topographic, or public safety factors justified County Ordinance Sections 54-51(c) and (i) for the protection of life and property, County Ordinance Sections 54-51(c) and (i) are ineffective, null and void under O.C.G.A. § 8-2-25(c).

213.   Because the County did not submit County Ordinance Sections 54-51(c) and (i) to the DCA for the DCA's review and comment, County Ordinance Sections 54-51(c) and (i) are ineffective, null and void under O.C.G.A. § 8-2-25(c).

214.   Because the County did not file a copy of County Ordinance Sections 54-51(c) and (i) with the DCA, County Ordinance Sections 54-51(c) and (i) are ineffective, null and void under O.C.G.A. § 8-2-25(c).

215.   Accordingly, Defendant Dawe has no authority to require Sterigenics to obtain a new certificate of occupancy in this case under County Ordinance Sections 54-51(c) and (i) for the additional reason that the County failed to comply with the requirements of O.C.G.A. § 8-2-25(c) when adopting County Ordinance Sections 54-51(c) and (i).

216.   An actual and substantial continuing controversy exists between Sterigenics and Defendants Dawe and Gobble who have adverse legal interests concerning Defendant Dawe's authority to require Sterigenics to obtain a new certificate of occupancy in this case under County Ordinance Sections 54-51(c) and (i).

217.   Because of the legal invalidity and ineffectiveness of Sections 54-51(c) and (i) of the County's Ordinance and Defendant Dawe's unlawful actions taken thereunder, Sterigenics has suffered injuries, and there is a substantial likelihood that Sterigenics will continue to suffer injuries in the future if Defendant Dawe is not declared to lack authority to require Sterigenics to obtain a new certificate of occupancy in this case under County Ordinance Sections 54-51(c) and (i), because County Ordinance Sections 54-51(c) and (i) are ineffective, null and void under O.C.G.A. § 8-2-25(c).

218.   Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, Sterigenics is entitled to a judgment declaring that Defendant Dawe lacks authority to require Sterigenics to obtain a new certificate of occupancy in this case under County Ordinance Sections 54-51(c) and (i), because County Ordinance Sections 54-51(c) and (i) are ineffective, null and void under O.C.G.A. § 8-2-25(c).

## COUNT VI – Temporary Restraining Order and Preliminary Injunction
### (Against Defendants Gobble and Dawe)

219.   Sterigenics re-alleges and reincorporates paragraphs 1 through 218 of this Complaint.

220.   The unlawful conduct of Gobble and Dawe to preclude Sterigenics' longstanding operations at the Facility should be temporarily restrained and preliminarily enjoined pending the final adjudication of Sterigenics' right to permanent declaratory relief in Counts I–V of this Complaint.

221.   Sterigenics is substantially likely to succeed on the merits of its claims in Counts I–V of this Complaint.

222.   The public interest overwhelmingly necessitates granting the temporary restraining order and preliminary injunction. The Facility would be sterilizing more than a million essential and life-saving medical products each day if Sterigenics were able to resume its operations.  Such products cannot be used, and safe and vital

medical care is at risk of not occurring, if the products are not sterilized in accordance with FDA requirements. Such products are in critical need, particularly during the coronavirus pandemic affecting our country. The public interest could not weigh more heavily in favor of granting a temporary restraining order and preliminary injunction.

223.   Indeed, the FDA warned months before the pandemic that patients' "care could be negatively affected" by the closure of the Facility, and that "a shortage – especially of life-saving, life sustaining, or other critical devices can be a detriment to public health."  **Exhibit 1**.  The FDA "alert[ed] the public to growing concerns about the future availability of sterile medical devices and impending medical device shortages."  *Id.*  The FDA explained that "[w]ithout adequate availability of ethylene oxide sterilization, we anticipate a national shortage of these devices and other critical devices including feeding tube devices used in neonatal intensive care units, drug-eluting cardiac stents, catheters, shunts, and other implantable devices."  *Id.*  The FDA stated that the impact resulting from the temporary closure of the Facility along with other sterilization facilities "will be difficult to reverse, and ultimately could result in years of spot or nationwide shortages of critical medical devices, which could compromise patient care."  *Id.*

224.   The COVID-19 pandemic has only escalated the critical need for medical products waiting to be sterilized at the Facility.

225.   Granting emergency and preliminary injunctive relief to allow Sterigenics' Facility to resume its operations and serve these critical needs is undeniably in the public's interest.

226.   Conversely, there is no harm to Gobble and Dawe by enjoining their unlawful conduct pending the adjudication of the declaratory judgment claims in Counts I–V of this Complaint.  Indeed, none of the reports from Dr. Munger or Ms. Warnick found any fire or life safety problem at the Facility.  And any alleged harm to them (there is none) is substantially outweighed by the risk of harm to Sterigenics, its customers, health care providers and patients their actions are causing.

227.   Gobble's and Dawe's unlawful preclusion of the Facility's operations also is irreparably harming Sterigenics and its customers.

228.   Gobble's and Dawe's closure of the Facility is preventing crucial medical products manufactured by Sterigenics' customers from getting to market for use by health care providers.  The customers' inability to supply health care providers with their products is causing the customers to lose substantial revenue necessary to support their businesses. *E.g.*, **Exhibit 58**. It also puts Sterigenics' customers at a substantial risk of losing healthcare providers as customers.

229.   Also, Sterigenics has substantial contracts with medical product manufacturers to provide sterilizations of their products at the Facility according to very specific sterilization processes to meet FDA requirements.

230.   Sterigenics has made substantial investments in the Facility in order to provide those approved sterilization processes at the Facility under those contracts.

231.   Sterigenics has a reputation as a reliable, safe, and innovative sterilization company.  That reputation has been built up over decades of superior performance in the field.

232.   Gobble's and Dawe's unlawful acts to preclude Sterigenics' longstanding operation of the Facility are causing and will continue to cause immediate and substantial irreparable losses to Sterigenics' operations, including lost revenue from unfilled contracts and lost business with existing customers; lost goodwill and reputation with current and potential customers, which is putting Sterigenics at a substantial risk of losing contracts and future business with existing and prospective customers; and the loss of its substantial investments in the Facility to perform the specific sterilization processes required to meet FDA standards under contracts with customers.

233.   That harm to Sterigenics is immediate and irreparable, as Sterigenics has no legal recourse against Defendants to recover for that harm.

234.   For these reasons, the Court should grant a temporary restraining order and a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a) to enjoin the unlawful actions of Gobble and Dawe precluding Sterigenics' longstanding use of the Facility pending the final adjudication of Sterigenics' right to permanent declaratory relief in Counts I–V of this Complaint.

Pursuant to L.R. 15.1, Sterigenics hereby incorporates and reasserts by reference all other paragraphs and all exhibits in its Complaint for Declaratory Judgment and Injunctive Relief filed on March 30, 2020, including those paragraphs in its Amendment to the Complaint filed on June 24, 2020, as if set forth fully herein.

Respectfully submitted this 23rd day of April, 2021.

|  |  |
|---|---|
|  | */s/ W. Clay Massey* |
|  | W. Clay Massey |
|  | Georgia Bar No. 476133 |
| ALSTON & BIRD LLP | Daniel F. Diffley |
| 1201 West Peachtree Street | Georgia Bar No. 221703 |
| Atlanta, GA 30309 | Kathryn C. Klorfein |
| Telephone: (404) 881-7000 | Georgia Bar No. 236173 |
| Facsimile: (404) 881-7777 | Thomas P. Grantham |
|  | Georgia Bar No. 116523 |
|  | *Attorneys for Plaintiff Sterigenics U.S., LLC* |

## <u>CERTIFICATE OF COMPLIANCE WITH</u><br><u>LOCAL RULE 5.1(B)</u>

I hereby certify that the foregoing was prepared in Times New Roman 14-point font, double-spaced, with a top margin of not less of 1.5 inches and a left margin of not less than 1 inch.

This 23rd day of April, 2021.

*/s/ W. Clay Massey*
W. Clay Massey

## **CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing Second Amendment to the Complaint for Declaratory Judgment and Injunctive Relief  via the Court's CM/ECF filing system, which will automatically send electronic notice to all attorneys of record.

This 23rd day of April, 2021.

*/s/ Thomas P. Grantham*
Thomas P. Grantham